Hoffman vs. The State.

HOFFMAN, Plaintiff in error, vs. THE STATE, Defendant in error.

*October 29 — November 16, 1897.*

*Criminal law: Effect of reversal of conviction: Trial: Harmless error: Instructions: Reasonable doubt.*

1. In a case where correct instructions at the first trial would not necessarily have prevented the conviction of the defendant of murder in the third degree, the action of the supreme court in setting aside a conviction ·of murder in that degree and remanding for a new trial, because there was no evidence to warrant an instruction submitting to the jury the question whether the defendant was, at the time of the killing, engaged in the commission of a felonious assault upon another person, is not equivalent to an acquittal of that offense. It requires the verdict of a jury to effect an acquittal.

2. To permit the prosecuting attorney to read to the jury a part of the record of a former trial of the defendant upon the same charge, showing that the prosecution was dismissed as against two others charged jointly with the defendant, cannot be deemed prejudicial to him, as intimating that the trial court was of the opinion that the state had proved its case as against this defendant.

3. For the court, in a murder case, to state to the jury that this was a second trial, and that a conviction of murder in the third degree had been reversed "for error committed on the first trial," will not. be presumed to have prejudiced the defendant by giving the jury the idea that the conviction was right on the merits, but reversed for an immaterial error.

4. The term "mere anger" is not equivalent to the term "heat of passion," and an instruction that if defendant was " angered " at deceased for knocking him down, and killed him unintentionally, it would be murder in the third degree, is not equivalent to saying that a killing "in the heat of passion" would constitute that offense.

5. It is error to define "reasonable doubt" to the jury as "an intelligent opinion or conviction that the guilt of the defendant has not been satisfactorily proven," since it seems to minimize the significance of a mere doubt, to the prejudice of the defendant.

ERROR to review a judgment of the circuit court for Wood county: CHAS. V. BARDEEN, Judge. *Reversed.*

The plaintiff in error was convicted of the crime of murder in the third degree.  Originally the information was against the plaintiff in error, Albert Hoffman, and Ferdinand Heise, charging them jointly with the murder of one William Herzog, from a premeditated design to effect his death.  On the first trial the action was dismissed as to Albert Hoffman and Ferdinand Heise, and proceeded against the plaintiff in error, and resulted in his conviction of murder in the third degree.  The case was brought to this court, where the judgment was reversed, and the cause remanded for a new trial, which again resulted in the conviction of the plaintiff in error of the crime of murder in the third degree.  The case is quite fully stated in the report of the case on the former appeal.  88 Wis. 166.  As the evidence on the second trial is, in most respects and in its general character, the same as on the first trial, there is no need to repeat it here.  Motions in arrest of judgment and for a new trial were overruled, and the plaintiff in error was sentenced to imprisonment in the state prison.

For the plaintiff in error there was a brief by *Geo. W. Cate*, attorney, and *Louis Marchetti*, of counsel, and a brief in reply by *Mr. Marchetti;* and the cause was argued orally by *Mr. Marchetti* and *Mr. C. B. Bird.*  To the point that by the judgment of the supreme court setting aside the former conviction on the ground that "there was no evidence to warrant the instruction given to the jury" as to murder in the third degree, the defendant stood acquitted of that offense, they cited *State v. Moon,* 41 Wis. 684; *Hall v. People,* 43 Mich. 417.

For the defendant in error there was a brief by *John L. Erdall*, first assistant attorney general, and *Chas. E. Whelan*, second assistant attorney general, and a separate brief by *Brown & Pradt*, of counsel; and the cause was argued orally by *Mr. Whelan.*  [The *Attorney General* took no part, having been counsel upon the former trial of the cause.]

Hoffman vs. The State.

NEWMAN, J. The plaintiff in error alleges for error (1) the overruling of his motion in arrest of judgment; (2) errors in the admission of evidence; (3) errors in the instructions to the jury; and (4) in refusing a new trial, and in giving judgment on the verdict.

1. It is urged in behalf of the plaintiff in error that the legal effect of his former conviction, together with the action of this court in setting aside the conviction and the grounds on which it was set aside, is the same as would have been a verdict of acquittal of murder in the third degree. So that, it is contended, he could not be legally tried again for that crime. It is argued in support of that contention that it is the plain purport of the former opinion that there was no evidence on that trial upon which the plaintiff in error could have been lawfully convicted of the crime of murder in the third degree, so that the necessary effect of correct rulings and instructions on that trial would have been the acquittal of the plaintiff in error of that crime. It is urged that "this court, when it can do so, should put the defendant in the same position as he would occupy had the trial court correctly ruled." This, indeed, seems to be a reasonable view of the matter, so far as it can be embraced in a comprehensive statement. But it may not be assumed, without due consideration, that the necessary result of correct rulings and instructions on that trial would have been an acquittal of the plaintiff in error. The case was reversed really for error in the instructions of the court. It was held that there was no evidence to warrant the instruction whereby the court submitted to the jury the question whether, at the time of the killing, the plaintiff in error was engaged in the commission of a felonious assault upon Robert Ristow, for that the evidence all went to show that the attack on Ristow was at an end before the killing. But there was, in fact, testimony in the case which tended to show that the plaintiff in error was, at the time

of the killing, engaged in a felonious assault upon Herzog. Now, if the trial court had given correct instructions, applicable to this state of the evidence, it must be admitted that it is not so very clear that the plaintiff in error would have been acquitted of murder in the third degree. His conviction was, apparently, just as reasonably to have been expected. It requires the verdict of a jury to effect an acquittal. The former decision of this court did leave the plaintiff in error in as good a position as he would have been in if the court had given correct instructions, applicable to the case. The only effect of setting aside the verdict which convicted him of murder in the third degree was to leave that issue open for another trial.

2. The court permitted the district attorney to read to the jury that part of the record of the former trial which stated the dismissal of the action as against Albert Hoffman and Ferdinand Heise. This was unnecessary and of no relevancy to the issue, though connected with the history of the case. It seems incapable of harm to the plaintiff in error. But it is urged that it must be considered prejudicial to the plaintiff in error, on the ground that it "let the jury draw the conclusion that, in the opinion of the first trial court, the state had proved a case against the defendant." They could draw the same inference from the fact that the court let the case go to the jury at all. But it is plain that neither fact could prejudice the minds of intelligent jurors in retrying the case. They must be credited with ordinary intelligence, such as is not likely to attach importance to the ordinary incidents of the trial which have no proper or natural bearing on the issue.

3. (a) The court informed the jury that this was a second trial; that a conviction of the plaintiff in error of murder in the third degree had been reversed by this court, "*for error* committed on the first trial." It is complained that this suggested or might suggest to the jury that, in the opinion

of the court, the conviction was good, except for some formal
or immaterial error. It is said that the word "error" con-
veys to the mind of the ordinary juror "the idea of an im-
material error,"— something merely formal, and not affect-
ing the merits of the case. So that the instruction may be
assumed to have left the impression on the jurors' minds that,
in the opinion of the court, the former verdict had been right
on the merits, and only bad for formal errors which did not
affect the question of the defendant's guilt. It is urged that
a former verdict "does exercise a most persuasive influence
on the minds of a jury retrying a case." It was not needful
to give the jury the information conveyed in the instruction.
It could not help them to a better understanding of the bear-
ing of evidence upon the issue before them. But, as to this
possible or probable influence on the minds of the jurors, it
is all chimerical. It will not do to frustrate the administra-
tion of criminal justice by setting aside verdicts on merely
fanciful psychological speculations as to the possible impres-
sion made by merely collateral and irrelevant facts on the
minds of the jurors. Jurors may be presumed to be men of
ordinary intelligence and acumen, and capable of a fair ap-
preciation of the proper importance and bearing of such col-
lateral and irrelevant facts as relate only to the mere history
of the proceedings.

(b) The court instructed the jury, in effect, that if the de-
fendant was "angered" at Herzog "for knocking him down
on the floor with his fist, and then killed him, as shown by
the evidence," unintentionally, it was the crime of murder
in the third degree. It is complained that this instruction
was, in effect, to say to the jury that, if the killing was due
to heat of passion, it was the crime of murder in the third
degree; whereas it is said that the law is that the effect of
heat of passion is to reduce the offense from murder to man-
slaughter, and that the jury should have been so instructed.
This contention confounds a state of *mere anger* with *heat*

*of passion.* While it is true that anger may amount to heat of passion, mere anger is not synonymous with heat of passion. There seems to have been no claim that defendant was in heat of passion. Indeed, there was scarcely room for it. The provocation does not seem to have been sufficient. The quarrel arose out of mere badinage at a country dance. The court evidently was not using the word " anger " as a synonym for " heat of passion," and was not likely to be so understood. The instruction was not erroneous in that respect.

(c) What seems to be a more serious criticism of the charge is in the definition which the court gave of the term " reasonable doubt." The court instructed the jury that, in order to justify a conviction, they must be convinced, by the evidence, of the defendant's guilt beyond a reasonable doubt. Then it defined what was meant by the term reasonable doubt. The court said: " A reasonable doubt does not mean or include every doubt. A fanciful or speculative doubt, which is wholly independent of the evidence, is not reasonable, within the meaning of the law. A reasonable doubt, as the term implies, is a doubt resting in reason, founded upon the whole evidence reasonably interpreted; *an intelligent opinion or conviction that the guilt of the defendant has not been satisfactorily proven.*" Certainly, this is not a fortunate definition of the term reasonable doubt. It needs be a skilful definer who shall make the meaning of the term more clear by the multiplication of words. A reasonable doubt must, no doubt, be a doubt arising upon the evidence or want of evidence, and must be reasonable. But all the while it may be a *doubt.* The vice of this instruction is that it seems to minimize the significance of a mere doubt by saying that, in order to be reasonable, the doubt must rise above the condition of a mere doubt into a realm of certainty and conviction. It seems to exclude all doubts which have not passed the stage of mere doubt, and become an intelli-

gent conviction that the case is not proved; whereas it has been understood that a mere doubt, reasonable and based upon the evidence or the want of it, that the case is proved, was sufficient to require the acquittal of the defendant. This instruction seems well calculated to leave in the minds of the jurors an erroneous impression of the strength and character of the reasonable doubt which should entitle the plaintiff in error to an acquittal. This rule of reasonable doubt has been considered the very touchstone of the defendant's right. Perhaps it has been sometimes given an undue measure of importance. But it is safer to suppose the instruction would have its natural effect, to the prejudice of the plaintiff in error. For this error there must be a new trial.

4. A new trial should have been given.

*By the Court.*— The judgment of the circuit court is reversed, and the cause remanded for a new trial. The warden of the state prison at Waupun will deliver the prisoner, *August Hoffman*, to the sheriff of Marathon county, to be held by him in custody until he is discharged therefrom according to law.